12 F.3d 1110
 Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Renee Lynn WHITE, aka Renee Lynn Vickery, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert VICKERY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Douglas PIRTLE, Defendant-Appellant.
 Nos. 92-30290 to 92-30292.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Dec. 9, 1993.
 
 Before: WALLACE, Chief Judge, BOOCHEVER and NOONAN, Circuit Judges.
 
 MEMORANDUM
 
 1
 White, Vickery, and Pirtle appeal from their convictions and sentences for conspiracy to manufacture methamphetamine and related offenses. White and Vickery were convicted of one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. Secs. 846 & 841(a)(1); one count of possession of methamphetamine, in violation of 21 U.S.C. Sec. 841(a)(1); and one count of possession of marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). Pirtle was convicted of one count of conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. Secs. 846 & 841(a)(1); and one count of use of a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1). The district court had jurisdiction over these cases pursuant to 18 U.S.C. Sec. 3231. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. Sec. 1291.
 
 
 2
 * White and Vickery argue that a tool box containing drugs, the key to the tool box, and four note and address books should have been suppressed because they were neither within the scope of the search warrant nor any recognized exception to the warrant requirement. We review motions to suppress de novo. See United States v. Thomas, 863 F.2d 622, 625 (9th Cir.1988).
 
 
 3
 The warrant authorized agents to search White and Vickery's motel room for "Proof of Conspiracy to Manufacture Methamphetamine (including phone number lists, chemical lists, methamphetamine recipes ... financial records ...)." The tool box could be searched legitimately for these items. United States v. Ross, 456 U.S. 798, 820-21 (1982). The notebook found inside the tool box and the address books found on the bed could be examined closely for telephone lists, chemical lists, or recipes without exceeding the scope of the warrant. See id.
 
 
 4
 White and Vickery contend that there was not probable cause to seize the key because the seizure occurred before the agents found the tool box. However, a magistrate judge found that the agents "noticed the tool box and the 'large Yale lock' on it upon entering the room," in other words, prior to seizing the key. White and Vickery did not object to this factual finding; therefore, they have waived their right to challenge it on appeal. Britt v. Simi Valley Unified School Dist., 708 F.2d 452, 454-55 (9th Cir.1983). According to the facts as they are presented to us, the agents could properly seize the key because there was probable cause to believe that it would open the tool box.
 
 II
 
 5
 Pirtle argues that his statement to agent Harper should be suppressed because he was not given a Miranda warning. However, the magistrate judge found that agent Harper did give Pirtle a Miranda warning. Pirtle failed to object to this factual finding; therefore, he has waived his right to appeal this issue. Id.
 
 
 6
 Pirtle also argues that his grand jury testimony should be suppressed because he did not voluntarily waive his Miranda rights. He contends that he waived his rights because he was under the impression that he would not be charged. We review the voluntariness of Pirtle's confession de novo. Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992).
 
 
 7
 Pirtle claims that his confession was involuntary because (1) the government helped him resolve unrelated state misdemeanor offenses, (2) he presumed he would receive immunity from prosecution or a sentence of probation, (3) the government released him from custody after he testified before the grand jury, and (4) the government gave him $200 to return home after his release. However, these factors are insufficient to render Pirtle's confession involuntary. Assistance in resolving unrelated state misdemeanor charges does not amount to an implied promise of leniency. The release from custody and the monetary assistance occurred after he testified; therefore, they could have no bearing on the voluntariness of the confession. Finally, Pirtle points to no evidence to support his presumption that he would be given immunity. To the contrary, the transcript of his grand jury testimony shows that the agreement between Pirtle and the government contained no promise of immunity and that any leniency would be discretionary and conditioned on Pirtle's continued cooperation. Pirtle affirmed the content of the agreement under oath. We conclude that Pirtle's waiver was voluntary.
 
 III
 
 8
 White and Vickery argue that the admission of Pirtle's grand jury testimony violated their confrontation clause rights under Bruton v. United States, 391 U.S. 123 (1968). We review alleged violations of the confrontation clause de novo. United States v. George, 960 F.2d 97, 99 (9th Cir.1992).
 
 
 9
 White's confrontation clause rights were not violated because the redacted testimony contained no reference to her existence. Richardson v. Marsh, 481 U.S. 200, 211 (1987). Vickery's name was replaced with the neutral term "that person." The testimony, therefore, was not facially incriminating; it did not by itself "compel a direct implication" of Vickery. United States v. Enriquez-Estrada, 999 F.2d 1355, 1359 (9th Cir.1993). Pirtle's testimony became incriminating to Vickery only when linked with other evidence, but this does not violate Vickery's confrontation clause rights. Id.
 
 
 10
 White and Vickery also argue that in addition to a violation of Bruton, there were other "spillover problems" created by Pirtle's testimony. This argument is both unsupported and without merit.
 
 
 11
 Pirtle also argues that his rights under Bruton were violated. However, Pirtle cannot raise this argument. The grand jury testimony was his own and its admission does not violate his right to confront himself. To the extent that Pirtle's argument can be construed to be that his motion to sever should have been granted, we reject it. Pirtle did not diligently pursue the motion, if there was one, and he did not renew it at the close of evidence. Thus, appeal on this issue has been waived. United States v. Felix-Gutierrez, 940 F.2d 1200, 1208 (9th Cir.1991), cert. denied, 113 S.Ct. 2332 (1993).
 
 IV
 
 12
 White and Vickery argue that prosecutorial misconduct denied them a fair trial. Allegations of prosecutorial misconduct justify reversal only if (1) the conduct was improper; and (2) it appears more probable than not that the alleged misconduct " 'materially affected the fairness of the trial.' " United States v. Polizzi, 801 F.2d 1543, 1558 (9th Cir.1986), quoting United States v. McKoy, 771 F.2d 1207, 1212 (9th Cir.1985).
 
 
 13
 The first allegation is that the prosecutor held a prejudicial picture, which had been excluded from evidence, so that the alternate juror could see it. The district court found that the prosecutor had handled the picture in such a way that it could not have been seen by the jury. This finding is not clearly erroneous. No misconduct occurred.
 
 
 14
 White and Vickery argue that the prosecutor committed misconduct in attempting to impeach Crader by questioning him about the criminal history of Moore and when he attempted to impeach Vickery by suggesting that he had purchased drugs from Pirtle. These attempts to impeachment may have been improper, but in both instances the district court struck the questions and testimony from the record and admonished the jury to disregard it. This rendered the misconduct harmless. Id.
 
 
 15
 A similar allegation is made concerning the prosecutor's attempt to impeach Vickery by questioning him about parole violations. We agree with the district court that the prosecutor had a good faith basis for asking these questions and that no misconduct occurred.
 
 
 16
 The next allegation is that the prosecutor improperly elicited testimony on cross-examination about the Sturgis bike run that implied involvement with drugs. But the record shows that the witness mentioned Sturgis in direct examination and the prosecution's questions were within the scope of that direct testimony. The record also shows that there was no implication that illegal drug activity was involved. This line of questioning was not misconduct.
 
 
 17
 Finally, we conclude that the remaining allegations of misconduct are without merit. The inquiry into De Forrest's knowledge of Vickery's relationship with his wife, the leading questions asked to agent Kynoch, and the two isolated instances of editorializing were harmless and did not deny White and Vickery a fair trial. Id.
 
 
 18
 White, Vickery, and Pirtle contend that the cumulative effect of the prosecutor's misconduct denied them a fair trial. This argument is meritless. To the extent that misconduct occurred, it did not deny any defendant a fair trial.
 
 V
 
 19
 White, Vickery, and Pirtle each make several arguments that the district court improperly excluded evidence. We review a district court's decision to admit or exclude evidence under exceptions to the hearsay rule for an abuse of discretion. United States v. Schaff, 948 F.2d 501, 505 (9th Cir.1991). We review the district court's construction of the rules of evidence de novo. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989).
 
 
 20
 Pirtle argues that testimony by various witnesses concerning his out-of-court statements was admissible under Federal Rule of Evidence 801(d)(2)(E). However, as counsel conceded at oral argument, Rule 801(d)(2)(E) only applies to statements by a coconspirator of the party offering the statement that are offered against that party. Pirtle's arguments to the contrary are frivolous.
 
 
 21
 White, Vickery, and Pirtle each argue that testimony was excluded on hearsay grounds that was admissible through the state of mind exception in Rule 803(3). We conclude that the court did not abuse its discretion in excluding these statements. The substance of each excluded statement was either admitted though other nonhearsay testimony or of such insignificant probative value that its exclusion was harmless.
 
 
 22
 White and Vickery argue that certain coconspirator statements were verbal acts that are not considered hearsay. They also argue that these statements were admissible under Rule 806 to rebut the credibility of Pirtle's grand jury testimony. These are new arguments on appeal. Counsel did not object on these grounds at trial; therefore, because there was no plain error, we will not consider these arguments. Hudspeth v. Commissioner, 914 F.2d 1207, 1215 (9th Cir.1990).
 
 
 23
 White and Vickery also make a related argument that the district court improperly admitted Pirtle's grand jury testimony under Rule 801(d)(2)(E). But they did not object on this ground at trial. Because there was no plain error, we do not address this argument.
 
 VI
 
 24
 White, Vickery, and Pirtle each argue that the district court erred in failing to give their proposed instruction that their mere presence while the conspiracy is ongoing is insufficient to convict them of the conspiracy charge. We recognize the intracircuit conflict over whether we review the district court's denial of a proposed jury instruction de novo or for abuse of discretion, e.g., United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 498 U.S. 938 (1990), but under either standard, we would affirm the district court decision to deny the proposed instruction. The instructions given by the court were sufficient to instruct the jury that presence alone is not sufficient to support a conspiracy conviction. The requested instruction would have been cumulative and, therefore, unnecessary. United States v. Ferris, 719 F.2d 1405, 1407-08 (9th Cir.1983) (recognizing that "a defendant is not entitled to a mere presence instruction of his own phrasing").
 
 
 25
 White, Vickery, and Pirtle each argue that the district court did not instruct the jury on specific intent. Whether a jury instruction misstates elements of a statutory crime is a question of law that we review de novo. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992) (Johnson ). As counsel admitted when stating the objection, the district court correctly instructed the jury on the intent requirements for each count. See Manual of Model Criminal Jury Instructions for the Ninth Circuit Secs. 8.05A, 9.04A (1992).
 
 
 26
 White, Vickery, and Pirtle each argue that the district court's final instruction, which was actually the verdict form, improperly emphasized certain instructions. We review the district court's formulation of jury instructions for abuse of discretion. Johnson, 956 F.2d at 199. The verdict form contained cross-references to the jury instructions in order to assist the jury in determining which instructions applied specifically to which counts. This is not an abuse of discretion because the jury was also specifically instructed to "consider the instructions as a whole" and "not to single out one instruction alone as stating the law."
 
 VII
 
 27
 White, Vickery, and Pirtle raise several challenges to their sentences under the Sentencing Guidelines. We review de novo the district court's determination of whether conduct falls within the scope of the Guidelines. United States v. Robinson, 967 F.2d 287, 293 (9th Cir.1992). We review the district court's factual findings during sentencing for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 28
 White and Vickery contend that the district court improperly enhanced their sentences for obstruction of justice pursuant to section 3C1.1 of the Sentencing Guidelines. The district court found that White and Vickery gave trial testimony that was "clearly false and unworthy of belief." This finding, which is not clearly erroneous, is sufficient to support an enhancement for obstruction of justice pursuant to section 3C1.1. United States v. Barbosa, 906 F.2d 1366, 1370 (9th Cir.), cert. denied, 498 U.S. 112 (1990).
 
 
 29
 Pirtle also argues that his sentence was improperly enhanced for obstruction of justice pursuant to section 3C1.1. The district court found that Pirtle's "elaborate and well-orchestrated story" was "clearly false and unworthy of belief." But Pirtle did not testify and there is no evidence that he, and not his lawyers, was responsible for the nature of the defense. This was not a proper ground for finding an obstruction of justice. United States v. Eirven, 987 F.2d 634, 635-36 (9th Cir.1993).
 
 
 30
 The district court also found that Pirtle obstructed justice by repeatedly changing his story. But Pirtle consistently told the truth to the government. He did tell White's attorney that he had lied to the grand jury, but the commentary to section 3C1.1 states that it is not obstruction of justice to make "false statements, not under oath, to law enforcement officers" unless the statement significantly obstructs or impedes investigation or prosecution of the offense. U.S.S.G. Sec. 3C1.1 comment. (n. 4(b)) (referencing note 3(g)). Pirtle's statement was made to a defense attorney, not a law enforcement officer, it was not made under oath, and there is no evidence that it "significantly obstructed or impeded the official investigation or prosecution of the instant offense." Id. (n. 3(g)). Pirtle also maintained his innocence at trial. But refusal to admit guilt cannot be obstruction of justice. Id. (n. 1).
 
 
 31
 There is evidence that Pirtle attempted to persuade Acuna to commit perjury. This would be an obstruction of justice. However, the district court stated that it did not consider this evidence in determining that Pirtle's sentence should be enhanced, and neither will we. We conclude that the district court's findings of fact do not adequately support its decision to enhance Pirtle's sentence for obstruction of justice pursuant to section 3C1.1.
 
 
 32
 White and Vickery argue that the district court improperly enhanced their sentence for possession of a firearm. Neither White nor Vickery actually possessed a firearm. However, Pirtle and Acuna each possessed firearms during the conspiracy and their possession was reasonably foreseeable to White and Vickery. The district court did not err in enhancing White and Vickery's sentence for possession of a firearm because they are responsible for the acts of their coconspirators that are reasonably foreseeable. United States v. Garcia, 909 F.2d 1346, 1349 (9th Cir.1990).
 
 
 33
 Pirtle argues that the district court erred in failing to depart downward pursuant to U.S.S.G. Sec. 5K2.12, because he was subjected to coercion and duress by other coconspirators following his grand jury testimony. But section 5K2.12, by its terms, only applies to coercion or duress that causes a person to commit the offense. It does not apply to postarrest coercion or duress. Pirtle also argues that he was entitled to a downward departure pursuant to 18 U.S.C. Sec. 3553(b). But appellate review is not available for a discretionary decision not to depart downward pursuant to section 3553(b). United States v. Morales, 898 F.2d 99, 102-03 (9th Cir.1990).
 
 VIII
 
 34
 We AFFIRM White, Vickery, and Pirtle's convictions. We AFFIRM White and Vickery's sentences. We VACATE Pirtle's sentence and REMAND for the district court to reconsider the obstruction of justice enhancement.