**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-30113 |
| Plaintiff - Appellee, | D.C. No. 4:14-cr-00099-BMM-1 |
| v. | |
| THEODORA ANN MORSETTE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted June 7, 2016
Seattle, Washington

Before: PAEZ, BYBEE, and CHRISTEN, Circuit Judges.

Theodora Morsette appeals her conviction for theft from an Indian Tribal

Government receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A), theft

from an Indian Tribal Government in violation of 18 U.S.C. § 1163, and theft from

a healthcare facility in violation of 18 U.S.C. § 669, as well as the district court's

---

[*]        This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

**1.** Morsette contends that under our decision in *United States v. Wyncoop*, 11 F.3d 119 (9th Cir. 1993), in order to trigger the statutory jurisdictional requirements of 18 U.S.C. § 666, the government must demonstrate that her employer, the Rocky Boy Health Board Clinic ("RBHB"), directly received federal funding. Morsette's argument is not supported by the facts underlying her conviction or by our case law.

To impose criminal liability under Section 666, the government must demonstrate that the defrauded agency received "in any one year period, benefits in excess of $10,000 under a Federal program involving a grant . . . or other form of Federal assistance." 18 U.S.C. § 666(b). The Supreme Court and our court have held that Section 666 applies when a defendant embezzles, steals, defrauds, or converts property belonging to an entity that receives federal funds through an intermediary local government or its agencies. *Salinas v. United States*, 522 U.S. 52, 61 (1997) (holding that a county deputy sheriff's acceptance of a bribe from a federal prisoner held in county jail satisfied Section 666's jurisdictional provision); *United States v. Bynum*, 327 F.3d 986, 991–92 (9th Cir. 2003) (holding that the

2

improper use of a city councilman's staff budget, which was allocated from a general fund containing federal funds, fell within Section 666's reach).

Conversely, in *Wyncoop*, the Government attempted to invoke Section 666 by alleging that students who attended a defrauded college received private student loans that were guaranteed by the federal government. 11 F.3d at 121. We held that because the defrauded entity received no federal funding, the existence of the federal guarantor program was too attenuated to satisfy Section 666's jurisdictional provision.

Morsette's case is analogous to *Bynum*, in which a local government "passed through" funding to its subdivisions. Witnesses for the government and for Morsette testified that the RBHB, received millions of dollars in federal funding for its health programs through pass-through grants from the Reservation's tribal government, direct federal grants, and Medicaid reimbursement payments. Thus, a rational trier of fact reasonably could find that the government's evidence satisfied Section 666's jurisdictional element.

2.	At trial, Morsette offered contradictory evidence to rebut the government's contention that her receipt of additional wages, severance pay, overtime, supplemental compensation, and excess retirement benefits was unlawful. Construing the evidence in favor of the jury's verdict, a rational trier of fact could

find that the government proved the elements of the charged crimes beyond a reasonable doubt. *See United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc).

3. Morsette contends that Congress limited the definition of a "health care benefit program" to health insurance and benefit contracts. The statutory text states that the term "health care benefit program . . . includes any . . . entity who is providing a medical benefit, item, or service for which payment may be made under" a health plan or contract. 18 U.S.C. § 24(b); *see also United States v. Ruff*, 535 F.3d 999, 1001 (9th Cir. 2008) (imposing Section 669 liability for theft of medical supplies from a health care clinic); *United States v. Tadios*, — F.3d —, 2016 WL 2893409, at *1 (9th Cir. May 18, 2016) (affirming a conviction under Section 669 for misapplication of a health clinic's funds). The parties do not contest that the RBHB is a health clinic that provides medical treatment and receives insurance reimbursements and health plan payments. Under the statute's plain text, Section 669 applies to health clinics; thus, Morsette's argument is without merit.

4. The district court did not plainly err when it did not exclude *sua sponte* evidence regarding the conviction of Morsette's supervisor, Fawn Tadios, for similar criminal conduct. Both Morsette and the government relied heavily on

4

Tadios' conviction to establish Morsette's *mens rea*, and consequently, the district court did not commit plain error. Even if the district court had erred, in light of the record evidence, its error did not affect Morsette's substantial rights.

5.      Generally "we do not review challenges to the effectiveness of defense counsel on direct appeal." *United States v. Rahman*, 642 F.3d 1257, 1259–60 (9th Cir. 2011). In rare circumstances, we may consider an ineffective assistance of counsel ("IAC") claim "(1) when the record on appeal is sufficiently developed to permit review . . . or (2) when the legal representation is so inadequate that it obviously denies a defendant [her] Sixth Amendment right to counsel. *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003). Defense counsel is ineffective if his actions fall outside the objectively wide range of professionally competent assistance and prejudice the defendant. *Strickland v. Washington*, 466 U.S. 668, 687–90 (1984).

Counsel's decision to argue a "culture of corruption" defense does not demonstrate that Morsette received objectively ineffective assistance. Trial counsel attempted to negate Morsette's intent by shifting blame to third parties, and although his strategy ultimately was unsuccessful, it did not constitute objectively deficient performance.

**6.**     Morsette concedes that she failed to preserve her argument that the government engaged in duplicitous charging in the indictment. *United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997). Accordingly, there is no need to address that issue.

**7.**     We review for an abuse of discretion the district court's formulation of the jury instructions, and we consider the instructions as a whole to determine whether they are misleading or inadequate to guide a jury's deliberations. *United States v. Gonzalez*, 786 F.3d 714, 717 (9th Cir. 2015); *United States v. Reed*, 575 F.3d 900, 926 (9th Cir. 2009). When a party fails to object to jury instructions, we review for plain error. *Jones v. United States*, 527 U.S. 373, 388 (1999).

Although Morsette did not request a specific unanimity instruction, she now contends that the district court should have given such an instruction *sua sponte*. A specific unanimity instruction may be required if jury confusion is likely, if the evidence and circumstances are factually complex, or if a conviction is "the result of different jurors concluding that the defendant committed different acts." *Gonzalez*, 786 F.3d at 717; *United States v. Anguiano*, 873 F.2d 1314, 1319–20 (9th Cir. 1989). When the government argues that the defendant employed several "means" to accomplish a criminal act, however, a general unanimity instruction may be sufficient. *United States v. Ruiz*, 710 F.3d 1077, 1081 (9th Cir. 2013); *see*

*also Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion) ("We have never suggested that in returning general verdicts . . . jurors should be required to agree upon a single means of commission.").

The government alleged that Morsette used several means to embezzle, steal or convert the RBHB's funds—it did not charge each improper transaction as a separate crime. Moreover, neither the indictment nor the facts were particularly complex or confusing. As a result, the jury charge required jurors to find unanimously that Morsette knowingly embezzled the RBHB's funds in order to convict Morsette; it did not require the jury to achieve unanimity with respect to each improper transaction. In light of the record evidence, the jury instructions were adequate, and the district court did not plainly err when it delivered a general unanimity instruction instead of a specific unanimity instruction.

**AFFIRMED.**